IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| MINISTRAP LLC,<br><br>　　　　Plaintiff,<br><br>v.<br><br>TARGET CORPORATION,<br><br>　　　　Defendant. | Civil Action No. 2:23-cv-00330-JRG-RSP<br><br>(Lead Case)<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS TO STAY**

Plaintiff Ministrap, LLC ("Ministrap" or "Plaintiff") hereby opposes Defendant Target Corporation's ("Target") Motion to Stay (Dkt. No. 18, the "Target Motion"), Defendants Best Buy Stores, L.P., BestBuy.com, LLC, and Best Buy Texas.com, LLC's ("Best Buy") Motion to Stay (Dkt. No. 19, the "Best Buy Motion"), Defendant Office Depot, LLC's ("Office Depot") Motion to Stay (Dkt. No. 20, the "Office Depot Motion"), Defendant Costco Wholesale Corporation's ("Costco") Motion to Stay (Dkt. No. 21, the "Costco Motion"), and Defendant Walmart, Inc.'s ("Walmart") Motion to Stay (Dkt. No. 23, the "Walmart Motion").

Target, Best Buy, Office Depot, Costco, and Walmart are collectively referred to as "Defendants." The Target Motion, Best Buy Motion, Office Depot Motion, Costco Motion, and Walmart Motion are all substantively identical and are hereinafter collectively referred to as the "Motions." To the extent there is any discrepancy between the motions, *e.g.*, pagination, the difference will be noted. Each of Defendants' Motions are premised on the existence of a declaratory judgment action, which was filed by Fantasia Trading, LLC d/b/a AnkerDirect ("Anker") in the Northern District of Georgia four months after this litigation was filed. *See Fantasia Trading, LLC d/b/a AnkerDirect v. Ministrap, LLC et al.*, 1:23-cv-04762-SDG (N.D. Ga.) ("Georgia DJ Action").

## TABLE OF CONTENTS

I. INTRODUCTION ............................................................................................................. 1

II. FACTUAL BACKGROUND .......................................................................................... 2

   A. THE LITIGATIONS PENDING BEFORE THIS COURT ............................................................. 2

   B. THE DECLARATORY JUDGEMENT FILED BY ANKER IN GEORGIA .................................. 4

III. RELEVANT LEGAL STANDARDS ............................................................................. 4

   A. THE CUSTOMER SUIT EXCEPTION ........................................................................................ 4

   B. TRADITIONAL STAY FACTORS .............................................................................................. 4

IV. ARGUMENTS AGAINST A STAY IN THE FIRST-FILED CONSOLIDATED ACTION ............................................................................................................................... 5

   A. ANKER IS NOT THE "ONLY" SOURCE OF INFRINGING PRODUCTS. ................................ 6

   B. DEFENDANTS' AGREEMENT TO BE BOUND IS NOT DISPOSITIVE OF ALL ISSUES. ............. 7

   C. THE TRADITIONAL STAY FACTORS ALSO WEIGH AGAINST A STAY. ............................. 8

      1. A Stay Will Not Simplify The Issues. ............................................................................... 8

      2. While Ministrap Will Be Prejudiced By A Stay, The Defendants Will Not Be Prejudiced By Routine Discovery That Will Inevitably Occur. ........................................ 8

      3. The State Of Discovery In This Case. ............................................................................... 9

V. CONCLUSION ............................................................................................................... 10

## TABLE OF AUTHORITIES

*Ambato Media, LLC v. Clarion Co.*, No. 2:09-cv-242-JRG, 2012 U.S. Dist. LEXIS 7558 (E.D. Tex. Jan. 23, 2012) ............................................................................................................... 9

*Clinton v. Jones*, 520 U.S. 681 (1997) ................................................................................................ 4

*Corydoras Techs., LLC v. Best Buy Co.*, No. 2:19-cv-00304-JRG-RSP, 2020 U.S. Dist. LEXIS 45578 (E.D. Tex. Mar. 16, 2020) ................................................................................. 5, 6, 7, 8

*CyWee Grp. Ltd. v. Huawei Device Co.*, No. 2:17-CV-495-WCB, 2018 U.S. Dist. LEXIS 142173 (E.D. Tex. Aug. 22, 2018) ............................................................................................. 4, 5, 8

*Fractus, S.A. v. AT&T Mobility LLC*, No. 2:18-CV-00135, 2019 U.S. Dist. LEXIS 121065 (E.D. Tex. July 19, 2019) ........................................................................................................... 6

*Kahn v. General Motors Corp.*, 889 F.2d 1078 (Fed. Cir. 1989) ................................................ 4, 5

*Katz v. Lear Siegler, Inc.*, 909 F.2d 1459 (Fed. Cir. 1990) ........................................................ 4, 7

*Landis v. N. Am. Co.*, 299 U.S. 248 (1936) ......................................................................................... 5

*Light Transformation Techs., LLC v. Light Sci. Grp. Corp.*, No. 2:12-CV-826-MHS-RSP, 2014 U.S. Dist. LEXIS 187715 (E.D. Tex. Mar. 27, 2014) ................................................................. 9

*Luv N' Care, Ltd. v. Jackel Int'l Ltd.*, Civil Action No. 2:14-cv-00855-JRG, 2014 U.S. Dist. LEXIS 158293 (E.D. Tex. Nov. 10, 2014) ............................................................................ 10

*NFC Tech, LLC v. HTC Am., Inc.*, No. 2:13-CV-1058-WCB, 2015 U.S. Dist. LEXIS 29573, 2015 WL 10691111 (E.D. Tex. Mar. 11, 2015) .......................................................................... 5

*Peloton Interactive, Inc. v. Flywheel Sports, Inc.*, No. 2:18-cv-00390-RWS-RSP, 2019 U.S. Dist. LEXIS 137774 (E.D. Tex. Aug. 14, 2019) ..................................................................................... 9

*Tegic Commc'ns Corp. v. Bd. Of Regents of Univ. of Texas Sys.*, 458 F.3d 1335 (Fed. Cir. 2006) 4

*Telemac Corp. v. Teledigital, Inc.*, 450 F. Supp. 2d 1107 (N.D. Cal. 2006) ................................... 9

*Viavi Sols. Inc. v. Zhejiang Crystal-Optech Co Ltd.*, No. 2:21-cv-00378-JRG, 2022 U.S. Dist. LEXIS 205106 (E.D. Tex. Nov. 10, 2022) .................................................................................... 5

## I. INTRODUCTION

This First-Filed Consolidated Action should not be stayed under the customer-suit exception or the traditional stay factors because (1) the Georgia DJ Action involves only one of the seven manufacturers at issue here, (2) the issue of validity is wholly absent from the Georgia DJ Action, and (3) a stay will neither create judicial efficiencies nor simplify any issues here.

***First***, and foremost, Anker is far from the only source of the Accused Products in these cases. In fact, Defendants' Accused Products are supplied to them by at least six additional vendors, including Otter Box, Modal, Satechi, Atomi, Onn, and Liquipel Powertek. And other than a vague claim that Anker sales are a "sizeable amount" of relevant sales, the Defendants make no effort to show exactly how much of their sales are attributable to Anker. For this reason, the infringement claims here cannot be fully resolved in the Georgia DJ Action.

***Second***, there are no allegations of invalidity in the Georgia DJ Action. Although Anker requested a declaratory judgment of non-infringement of the Asserted Patents by its products, it failed to request a declaratory judgment of invalidity of any of the Asserted Patents. Unlike Anker, the Defendants here are all alleging invalidity of the Asserted Patents, so Defendants agreement to be bound by the outcome of the Georgia DJ Action is meaningless here.

***Third***, staying this action will not promote efficiency, simplify issues, or foster judicial economy under the traditional stay factors. Truth be told, a stay of this case will only delay the inevitable. Most of this case will eventually have to proceed regardless of the outcome in the Georgia DJ Action, which involves a fraction ($1/7^{th}$) of the infringement issues and none of the validity issues. Although Defendants speculate that a stay could streamline the issues or conserve resources, the only sure result of a stay is that Ministrap will be unable to enforce its patents and will suffer the loss of evidence in the face of an indefinite stay. The Motion should be denied.

## II. FACTUAL BACKGROUND

### A. THE LITIGATIONS PENDING BEFORE THIS COURT

1. On July 14, 2023, Ministrap filed complaints for patent infringement against the Defendants.[1] Each of those complaints alleged infringement of three of Ministrap's patents, including U.S. Patent Numbers 7,587,796, 8,371,000, and 9,386,824 (the "Asserted Patents").

2. In the *Best Buy* Litigation, Ministrap identified the following Accused Products as infringing the Asserted Patents:

> [Best Buy] sells, uses, cause to be used, provides, supplies, or distributes one or more products featuring binding straps, fastening straps, and/or strap systems, including, but not limited to, various replacement cables featuring brand names such as "**MODAL**," "**Anker**," "**SATECHI**," and "**OtterBox**" that include straps or strap systems.

*Best Buy* Litigation, Dkt. No. 1 at ¶18 (emphasis added).

3. Ministrap alleged that the following Accused Products infringe the Asserted Patents in the complaint filed in the *Walmart* Litigation,:

> [Walmart] sells, uses, cause to be used, provides, supplies, or distributes one or more products featuring binding straps, fastening straps, and/or strap systems, including, but not limited to, various replacement cables featuring the brand names "**onn**," "**Anker**," "**Liquipel Powertek**," and "**OtterBox**" that include straps or strap systems[.]

*Walmart* Litigation, Dkt. No. 1 at ¶18 (emphasis added).

4. In the complaint filed in the *Costco* Litigation, Ministrap alleged infringement of the Asserted Patents by the following Accused Products:

> [Costco] sells, uses, cause to be used, provides, supplies, or distributes one or more products featuring binding straps, fastening straps, and/or strap systems, including,

---

[1] *Ministrap, LLC v. Best Buy Co., Inc., et al*, 2:23-cv-00327 (E.D. Tex.) ("*Best Buy* Litigation"), *Ministrap, LLC v. Costco Wholesale Corp.*, 2:23-cv-00328 (E.D. Tex.) ("*Costco* Litigation"), *Ministrap, LLC v. Office Depot, Inc.*, 2:23-cv-00329 (E.D. Tex.) ("*Office Depot* Litigation"), *Ministrap, LLC v. Target Corp.*, 2:23-cv-00330 (E.D. Tex.) ("*Target* Litigation"), and *Ministrap, LLC v. Walmart Inc.*, 2:23-cv-00331 (E.D. Tex.) ("*Walmart* Litigation") (collectively, the "First-Filed Consolidated Action").

but not limited to, various replacement cables featuring brand names such as "**Anker**" and "**Atomi**" that include straps or strap systems.

*Costco* Litigation, Dkt. No. 1 at ¶18 (emphasis added).

5. Ministrap identified the following Accused Products as infringing the Asserted Patents in the *Office Depot* Litigation:

Office Depot sells, uses, cause to be used, provides, supplies, or distributes one or more products featuring binding straps, fastening straps, and/or strap systems, including, but not limited to, various replacement cables featuring brand names such as "**OtterBox**" and "**Anker**" that include straps or strap systems.

*Office Depot* Litigation, Dkt. No. 1 at ¶18 (emphasis added).

6. In the *Target* Litigation, Ministrap identified the following Accused Products:

[Target] sells, uses, causes to be used, provides, supplies, or distributes one or more products featuring binding straps, fastening straps, and/or strap systems, including, but not limited to, various replacement cables featuring the brand names "**Anker**" and "**Otter Box**".

*Target* Litigation, Dkt. No. 1 at ¶19 (emphasis added).

7. In late December, each Defendant answered the complaint. In each of those answers, the Defendants asserted various affirmative defenses, including defenses that alleged the Asserted Patents are invalid.[2] An example of Defendants' affirmative defenses appears below:

The claims of **the Asserted Patents are invalid and/or unenforceable** at least because they fail to meet one or more of the requirements or conditions for patentability under Title 35 of the United States Code, including without limitation, §§ 101, 102, 103, and/or 112.

*Best Buy* Litigation, Dkt. No. 10 at p. 22 (emphasis added).

8. On November 3, 2023, the Court set a scheduling conference for the First-Filed Consolidated Action for December 4, 2023. *See* Target Litigation, at Dkt. No. 15.

---

[2] *Best Buy* Litigation, Dkt. No. 10 at p. 22; *Costco* Litigation, Dkt. No. 10 at p. 17; *Office Depot* Litigation, Dkt. No. 13 at p. 16; *Target* Litigation, Dkt. No. 10 at pp. 21-22; *Walmart* Litigation, Dkt. No. 10 at p. 16.

3

B.  **THE DECLARATORY JUDGEMENT FILED BY ANKER IN GEORGIA**

9.  On October 18, 2023, Anker sued Ministrap seeking declaratory judgments of non-infringement for the three Asserted Patents. *See* Georgia DJ Action, Dkt. No. 1. Importantly, Anker did not allege any claim or defense related to invalidity in the Georgia DJ Action.

III.  **RELEVANT LEGAL STANDARDS**

A.  **THE CUSTOMER SUIT EXCEPTION**

"The customer suit exception is an exception to the general rule that favors the forum of the first-filed action[.]" *CyWee Grp. Ltd. v. Huawei Device Co.*, No. 2:17-CV-495-WCB, 2018 U.S. Dist. LEXIS 142173,*13 (E.D. Tex. Aug. 22, 2018)). "Efficiency and judicial economy are guiding principles underlying the doctrine" of the customer suit exception. *Kahn v. General Motors Corp.*, 889 F.2d 1078, 1081 (Fed. Cir. 1989). "[A] critical question under the customer suit exception 'is whether the issues and parties are such that the disposition of one case would be dispositive of the other.'" *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1463 (Fed. Cir. 1990).

Application of the customer suit exception is neither absolute nor automatic. The customer suit exception is subject to a three-factor test: (1) whether the customer-defendant in the earlier-filed case is merely a reseller; (2) whether the customer defendant agrees to be bound by any decision in the later-filed case that is in favor of the patent owner; and (3) whether the manufacturer is the only source of the infringing product. *Tegic Commc'ns Corp. v. Bd. Of Regents of Univ. of Texas Sys.*, 458 F.3d 1335, 1343 (Fed. Cir. 2006).

B.  **TRADITIONAL STAY FACTORS**

This Court has the inherent power to control its own docket, including the power to determine if a stay of proceedings is appropriate. *Clinton v. Jones*, 520 U.S. 681, 706 (1997). How to best manage the Court's docket "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55

4

(1936). Courts also consider three general stay factors when determining whether a stay is appropriate: (1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether a stay will simplify the issue in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set. *CyWee Grp. Ltd.*, 2018 U.S. Dist. LEXIS 142173 at *14; *see also Corydoras Techs., LLC v. Best Buy Co.*, No. 2:19-cv-00304-JRG-RSP, 2020 U.S. Dist. LEXIS 45578, *13-14 (E.D. Tex. Mar. 16, 2020).

Although the factors should be approached in a flexible manner, this Court has held that "[the] most important factor bearing on whether to grant a stay in this case is the prospect that . . . will result in simplification of the issues before the Court." *Viavi Sols. Inc. v. Zhejiang Crystal-Optech Co Ltd.*, No. 2:21-cv-00378-JRG, 2022 U.S. Dist. LEXIS 205106, *2 (E.D. Tex. Nov. 10, 2022) (quoting *NFC Tech, LLC v. HTC Am., Inc.*, No. 2:13-CV-1058-WCB, 2015 U.S. Dist. LEXIS 29573, *3, 2015 WL 10691111, *2 (E.D. Tex. Mar. 11, 2015) (denying motion to stay because it was impossible to determine whether a stay would likely result in simplifying the case)).

## IV. ARGUMENTS AGAINST A STAY IN THE FIRST-FILED CONSOLIDATED ACTION

The Court should not stay this First-Filed Consolidated Action under either the customer-suit exception or the traditional stay factors. The general rule is that "'as a principle of sound judicial administration, the first suit should have priority,' absent special circumstances." *Kahn*, 889 F.2d at 1089. No such special circumstances are present here. **First**, Anker is not the only source of infringing products in this case, and since the Georgia DJ Action involves only one of the seven manufacturers at issue here, the customer suit exception should not apply. **Second**, the issue of validity is wholly absent from the Georgia DJ Action, which means that half of this case will not be addressed in Georgia, and so any agreement to be bound by the outcome of the Georgia DJ Action is meaningless. **Third**, since the Georgia DJ Action only involves a fraction of the

5

infringement issues and none of the validity issues in this case, a stay will not create judicial efficiencies or simplify any issues here, and in fact, it will only prejudice Ministrap, who will be unable to enforce its patents and suffer the loss of evidence in the face of an indefinite stay.

### A.  ANKER IS NOT THE "ONLY" SOURCE OF INFRINGING PRODUCTS.

Defendants are the true defendants here because the Accused Products are purchased from multiple vendors. *Fractus, S.A. v. AT&T Mobility LLC*, No. 2:18-CV-00135, 2019 U.S. Dist. LEXIS 121065, *18 (E.D. Tex. July 19, 2019) ("Where a customer is sued for infringement based upon accused products it purchased from multiple unrelated manufacturers, the customer is the 'true defendant,' not any single manufacturer"); *see also Corydoras*, 2020 U.S. Dist. LEXIS 45578 at *8-9 (finding customer suit exception inapplicable where resolution of the later-filed manufacturer case would not resolve claims related to nine other, unrelated manufacturers).

The Defendants have pointed to Anker as a supplier of the Accused Products.  However, Defendants' Motion and the declarations submitted in support thereof are silent as to what percentage of sales the Anker products comprise.  Instead, the few Defendants who do characterize it present the Court with the opaque term "sizeable amount."  Motion at pp. 1-2.[3]  At this early stage of the case, it is unclear what percentage of the Accused Products the Defendants sell from these other brands versus the Anker products.  Regardless, Anker is only one of seven different manufacturers that provide the Accused Products to Defendants.  Therefore, even if the Georgia DJ Action somehow resolved all claims related to the Anker products, the products of at least six other unrelated manufacturers would remain in this case.  On this record, the customer suit exception is inapplicable.  *Corydoras*, 2020 U.S. Dist. LEXIS 45578 at *10 ("Even if the declaratory judgment action somehow resolved all claims related to Amazon's accused products,

---

[3] Best Buy and Costco do not provide any hint of how much of their sales involve Anker products.

all of the other non-Amazon accused products would still remain in this case."); *see also Katz*, 909 F.2d at 1463 (the "critical question under the customer suit exception" is "whether the issues and parties are such that the disposition of one case would be dispositive of the other").

### B. DEFENDANTS' AGREEMENT TO BE BOUND IS NOT DISPOSITIVE OF ALL ISSUES.

Defendants' agreement to be bound by the final outcome of the Georgia DJ Action (*see* Motion at p. 7) is meaningless here because it will not be dispositive of all issues in the present litigation. As detailed above, infringement claims for products from six other manufacturers must be resolved in this litigation, whereas only Anker's products are involved in the Georgia DJ Action. Thus, Defendants cannot claim that resolution of Anker's infringement will resolve all infringement related issues in this case. *Corydoras*, 2020 U.S. Dist. LEXIS 45578 at *10. Moreover, the Georgia DJ Action will not resolve any of the invalidity issues that Defendants have raised in this litigation. *See*, *supra*, §II at ¶7. Specifically, Anker has not asserted any invalidity declaratory judgment claims or invalidity defenses related to the Asserted Patents in the Georgia DJ Action. Therefore, even if the Georgia DJ Action is resolved in favor of Anker, that litigation will not be dispositive of any invalidity issues here.

In *Corydoras*, the manufacturer also did not assert invalidity claims in its declaratory judgment action, and this Court found that was further evidence that the customer-suit exception should not apply, stating:

> Additionally, Amazon's declaratory judgment action does not seek to invalidate the patents-in-suit, making a stay even less appropriate. *See* Case No. 1:19-cv-01095-RP, Dkt. No. 1 at 6-12. By contrast, CommScope did seek to invalidate the patents in Fractus. *See Fractus*, 2019 U.S. Dist. LEXIS 121065, 2019 WL 3253639, at *5; *see, e.g*., Case No. 2:18-cv-00135, Dkt. No. 92 at 16. Given that invalidity is not addressed in that case, Amazon's declaratory judgment action is even less likely to resolve major issues in the case. "[A] critical question under the customer-suit exception 'is whether the issues and parties are such that the disposition of one case would be dispositive of the other." This distinction provides further support for a conclusion that the customer-suit exception does not apply here.

*Corydoras*, 2020 U.S. Dist. LEXIS 45578 at *10. Thus, like in *Corydoras*, invalidity is not currently at issue in the Georgia DJ Action, and Defendants fail to address, or cite any case from this district where the Court granted a stay under those circumstances.

### C. THE TRADITIONAL STAY FACTORS ALSO WEIGH AGAINST A STAY.

Contrary to what Defendants claim in their Motions, the traditional stay factors also strongly disfavor a stay here. Courts consider three traditional considerations when determining whether a stay is appropriate: (1) whether a stay will simplify the issue in question and trial of the case; (2) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party; and (3) whether discovery is complete and whether a trial date has been set. *CyWee*, 2018 U.S. Dist. LEXIS 142173, 2018 WL 4002776, at *3.

#### 1. A Stay Will Not Simplify The Issues.

As explained above, the Georgia DJ Action will not even resolve a small fraction of the issues in Ministrap's cases against the Defendants. Indeed, regardless of the results in Georgia, this Court will need to adjudicate issues related to infringement of the Asserted Patents by at least six other brands. Moreover, invalidity of the Asserted Patents is not at issue in the Georgia DJ Action, so their validity will not be resolved there; it will have to be addressed here. This factor strongly disfavors a stay.

#### 2. While Ministrap Will Be Prejudiced By A Stay, The Defendants Will Not Be Prejudiced By Routine Discovery That Will Inevitably Occur.

If a stay is granted, Ministrap will be prejudiced in a number of ways. First, Ministrap has a statutory right to pursue litigation against those selling and offering to sell the Accused Products, and it also has the right to the timely enforcement of its patents. This Court has previously acknowledged that a patent holder has "an interest in the timely enforcement of its patent right." *Ambato Media, LLC v. Clarion Co.*, No. 2:09-cv-242-JRG, 2012 U.S. Dist. LEXIS 7558, at *4

8

(E.D. Tex. Jan. 23, 2012). Staying this case will not only contravene that interest, it would delay its ultimate resolution for an indefinite period of time, including through a Federal Circuit appeal of the Georgia DJ Action. *Peloton Interactive, Inc. v. Flywheel Sports, Inc.*, No. 2:18-cv-00390-RWS-RSP, 2019 U.S. Dist. LEXIS 137774, at *11-12 (E.D. Tex. Aug. 14, 2019) (denying motion to stay, and finding the prejudice factor weighed against a stay, based on additional delays imposed by appeals). Moreover, staying the action for such an indefinite period of time would essentially remove the Court's discretion regarding control of its own docket and hold the Court in limbo awaiting determinations that could take years to reach an absolute resolution.

Second, Defendants' proposed stay is likely to cause Ministrap to face evidentiary prejudice. Specifically, Ministrap will face potential spoliation of evidence and loss of witness testimony. During the length of the stay, witnesses' memories may further fade, key witnesses will move and change employment, and documents may be lost. *See Light Transformation Techs., LLC v. Light Sci. Grp. Corp.*, No. 2:12-CV-826-MHS-RSP, 2014 U.S. Dist. LEXIS 187715, at *7 (E.D. Tex. Mar. 27, 2014) (denying stay and finding the "elements of Plaintiff's claimed prejudice—inability to enforce its patents and loss of evidence (and memory) to time—would definitely occur during the year(s) of a stay"); *Telemac Corp. v. Telendigital, Inc.*, 450 F. Supp. 2d 1107, 1111 (N.D. Cal. 2006) (concluding that staying the case could lead to "further loss of information" and a "tactical advantage."). This factor also weighs strongly against granting a stay.

### 3. The State Of Discovery In This Case.

Infringement contentions have already been served, a scheduling conference is set to occur on December 4, 2023, and discovery is set to open soon. The stage of the proceedings weighs against a stay, or at the very least, it does not outweigh the other two factors strongly enough to warrant a stay. *Luv N' Care, Ltd. v. Jackel Int'l Ltd.*, Civil Action No. 2:14-cv-00855-JRG, 2014

9

U.S. Dist. LEXIS 158293, at *14-15 (E.D. Tex. Nov. 10, 2014) (denying motion to stay, where even though the parties had yet to file a proposed Docket Control Order, the Court found on balance, the other two factors outweighed the third factor).

## V.   CONCLUSION

For the above reasons, Defendants' Motions should be denied.

Dated: <u>November 24, 2023</u>                    Respectfully submitted,

                                                       By: */s/ James F. McDonough, III*
James F. McDonough, III (GA 117088)*
Jonathan R. Miller (GA507179)*
Travis E. Lynch (GA 162373)*
**ROZIER HARDT MCDONOUGH PLLC**
659 Auburn Avenue NE, Unit 254
Atlanta, Georgia 30312
Telephone: (404) 564-1866, -1863, -1862
Email: jim@rhmtrial.com
Email: miller@rhmtrial.com
Email: lynch@rhmtrial.com

C. Matthew Rozier (CO 46854)*
Kristin M. Whidby (VA 91805)*
**ROZIER HARDT MCDONOUGH PLLC**
500 K Street, 2nd Floor
Washington, District of Columbia 20005
Telephone: (404) 779-5305; (202) 217-0575
Email: matt@rhmtrial.com
Email: kristin@rhmtrial.com

Jonathan L. Hardt (TX 24039906)*
**ROZIER HARDT MCDONOUGH PLLC**
712 W. 14th Street, Suite C
Austin, Texas 78701
Telephone: (737) 295-0876
Email: hardt@rhmtrial.com

**Attorneys for Plaintiff*, MINISTRAP, LLC*

                                                                *Admitted to the Eastern District of Texas

## **CERTIFICATE OF SERVICE**

I hereby certify that on this day a true and correct copy of the foregoing document was filed electronically under seal in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who are deemed to have consented to electronic service.

Dated: November 24, 2023

By: */s/ James F. McDonough, III*
James F. McDonough, III

12