IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| MINISTRAP, LLC,<br><br>  Plaintiff,<br><br> v.<br><br> TARGET CORPORATION,<br><br>  Defendant. | Civil Action No. 2:23-cv-00330-JRG-RSP<br><br>(Lead Case) |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTIONS TO STAY (DKT. 18, 19, 20, 21, 23)**

Defendants (i) Target Corporation ("Target"); (ii) Best Buy Stores, L.P., BestBuy.com, LLC, and Best Buy Texas.com, LLC ("Best Buy"); (iii) Office Depot, LLC ("Office Depot"); (iv) Costco Wholesale Corporation ("Costco"); and (v) Walmart, Inc. ("Walmart") (collectively, "Defendants") hereby submit the following reply in further support of Defendants' Motions to Stay (Dkt. 18 (Target Motion to Stay), 19 (Best Buy Motion to Stay), 20 (Office Depot Motion to Stay), 21 (Costco Motion to Stay), 23 (Walmart Motion to Stay)).

## I.    ARGUMENT

Plaintiff Ministrap, LLC ("Ministrap" or "Plaintiff") essentially seeks a loophole whereby a plaintiff can be insulated from the customer-suit exception as long as multiple brands of accused products are asserted. Such an outcome would not only promote judicial ***diseconomy***, but also encourage serial and harassing lawsuits against multiple retailers for no better reason than to avoid a final determination on the merits against the "true defendant" supplier. For the reasons below, and those in Defendants' opening briefs, no such loophole should apply, and the relevant factors weigh in favor of at least severing and staying the portions of this case regarding accused Anker products.

    A.    <u>Anker Products Are Common to All Defendants, and At Least the Allegations Against the Anker Products Should be Severed and Stayed</u>

There is no dispute that ***all*** Defendants have been accused of infringement by selling Anker products. Although Plaintiff identifies six other suppliers of allegedly infringing products (Dkt. 24 at 1), only the accused Anker products are common amongst all five Defendants. (*See id*. at 2-3.) Therefore, severing and staying the allegations against the Anker products would necessarily "facilitate just, convenient, efficient, and less expensive determination" of these allegations. *See Sonrai Memory Ltd. v. LG Elecs. Inc.*, No. 6:21-CV-001284-ADA, 2022 WL 545051, at *1, 5–6 (W.D. Tex. Feb. 23, 2022) (severing and staying customer infringement allegations involving

1

products supplied by two out of three manufacturers pending final resolution of those manufacturers' separate lawsuits under the customer-suit exception to "facilitate just, convenient, efficient, and less expensive determination" of those allegations) (quoting *In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1365 (Fed. Cir. 2014)); *Flygrip, Inc. v. Walmart Inc.*, No. 6:21-CV-01082-ADA, 2022 WL 2373714, at *3–4 (W.D. Tex. June 29, 2022) (where patentee sued retailer supplied with accused products by three different suppliers, and where two of the suppliers had second-filed declaratory judgment actions, severing the infringement claims from those two suppliers under the customer-suit exception).

Certainly, there would be no dispute that the customer-suit exception applies if Plaintiff only asserted Anker products in this case. But to hold otherwise because other brands are accused in the same lawsuit, does not (and cannot) legally change the "true defendant" with respect to Anker's products from Anker to its customers. As one court critical of this distinction remarked, "why the customer is not the 'true defendant' when the customer resells accused products from one manufacturer—permitting invocation of the customer-suit exception—but *is* the 'true defendant' when it resells accused products from two, three, or more manufacturers—rendering application of the customer-suit exception inappropriate" is "reject[ed] … as specious." *Kirsch Rsch. & Dev., LLC v. Bluelinx Corp.*, No. 6:20-CV-00316-ADA, 2021 WL 4555803, at *5 (W.D. Tex. Oct. 4, 2021).

Therefore, a ruling that Anker cannot shoulder the burden of addressing Plaintiff's allegations head-on to insulate Defendants from these infringement allegations would reward Plaintiff for suing multiple brands at once. Anker should be permitted, as the "true defendant," to insulate its customers from the legal expense and burden of defending against these allegations regardless of whatever unrelated product Plaintiff chooses to bring into this lawsuit. The Georgia

DJ Action would therefore simplify the issues in this case, and reduce wasteful and redundant expense by resolving all of the Anker product allegations.

      B.      <u>Invalidity Has a Greater Likelihood of Being Resolved by Anker</u>

Plaintiff asserts that the customer-suit exception cannot apply because the Georgia DJ Action only seeks declaratory judgement of noninfringement. (Dkt. 24 at 7-8.) In actuality, invalidity has a greater likelihood of being addressed and resolved by Anker than Defendants.

First, even without a separate declaratory judgment of invalidity claim, to the extent Plaintiff in the Georgia DJ Action asserts a counterclaim for infringement and claims validity of the patents-at-issue, affirmative defenses of invalidity will be raised by Anker. To the extent Plaintiff does not claim validity of the patents-at-issue in the Georgia DJ Action, it effectively admits invalidity of the patents-at-issue. Therefore, there is a "high probability" (if not virtual guarantee) that invalidity will be addressed in the Georgia DJ Action. *See Flygrip, Inc. v. Walmart Inc.*, No. 6:21-CV-01082-ADA, 2022 WL 2373714, at *3 (W.D. Tex. June 29, 2022) (although declaratory judgment of invalidity was not raised in supplier's declaratory judgment action, finding in favor of the customer-suit exception because of the "high probability that the invalidity issue will be raised during litigation of the DJ Actions" via affirmative invalidity defenses).

Second, by not seeking declaratory judgement of invalidity, Anker is able to file a petition for *inter partes review*. *See* 35 U.S.C. § 315(a)(1) ("An inter partes review may not be instituted if, before the date on which the petition for such a review is filed, the petitioner or real party in interest filed a civil action challenging the validity of a claim of the patent."). By design, this is a more cost-effective and efficient administrative procedure to address the invalidity of Plaintiff's asserted claims. *See, e.g.*, *Cellect LLC v. Samsung Elecs. Co.*, No. 19-CV-00438-CMA-MEH, 2020 WL 3425166, at *6 (D. Colo. June 23, 2020) ("IPR provides a more efficient and timely resolution to disputes of patent validity than can be achieved by litigation.").

3

Finally, even with a declaratory judgment of invalidity claim, there is no guarantee that invalidity would be resolved in the Georgia DJ Action. The Federal Circuit has held that it is not an abuse of discretion for a court to dismiss invalidity claims without prejudice if summary judgment of noninfringement is granted: "[W]e have repeatedly held that a district court faced with an invalidity counterclaim challenging a patent that it concludes was not infringed may either hear the claim or dismiss it without prejudice." *SSI Techs., LLC v. Dongguan Zhengyang Elec. Mech. LTD.*, 59 F.4th 1328, 1338 (Fed. Cir. 2023).

In sum, (i) there remains a "high probability" (if not virtual guarantee) that invalidity will be raised in the Georgia DJ Action, (ii) Anker is free to seek *inter partes review* because no declaratory judgment of invalidity claim is raised, and (iii) even if declaratory judgment of invalidity was part of the Georgia DJ Action, there is no guarantee that the court would rule on invalidity. To find the customer-suit exception inapplicable because of this factor would have the unintended consequence of ***delaying*** a ruling on invalidity. Suppliers should not have to choose between the customer-suit exception versus forfeiting *inter partes review* – a more efficient and timely procedure. Moreover, to the extent Anker successfully invalidates the asserted claims via *inter partes review* or the Georgia DJ Action, that common issue will resolve this entire case since all Defendants are accused of infringing the same patents. (*See* Dkt. 24 at 2.)

C.  A Stay Will Simplify the Issues

According to Plaintiff, because there are other brands of accused products, and no declaratory judgment of invalidity claim, a stay will not simplify the issues. (Dkt. 24 at 8.) On the contrary, invalidity is more likely to be addressed and resolved by Anker in the Georgia DJ Action or via *inter partes review*. *See supra* at Section I(B). And, the infringement allegations against the Anker accused products will necessarily be resolved in the Georgia DJ Action: Either the infringement claims will be resolved due to a finding of noninfringement, or Plaintiff will have

4

exhausted its patent rights with a favorable ruling. *See GreatGigz Sols., LLC v. Costco Wholesale Corp.*, No. 6-21-CV-00807, 2022 WL 1037114, at *3 (W.D. Tex. Apr. 6, 2022) ("If [supplier] is found not liable for infringing on the Asserted Patents in the Supplier Suit, that judgment would be dispositive of [plaintiff's] infringement claims here. And if [supplier] is found liable to [plaintiff] in the Supplier Suit, … [plaintiff] will have exhausted its rights as a patent holder and will be precluded from collecting damages with respect to the same infringing product from a downstream user like the Customer Defendants.") (internal quotations omitted).

   D. <u>Plaintiff Fails to Demonstrate Any Prejudice</u>

Plaintiff alleges that a stay in favor of the Georgia DJ Action would delay resolution of whether the accused Anker products infringe for "an indefinite period of time, including through a Federal Circuit Appeal of the Georgia DJ Action." (Dkt. 24 at 8-9.) Plaintiff fails to proffer any reasoning (aside from *ipse dixit*) that the Georgia DJ Action would proceed "indefinitely" as compared to this case. Given that Plaintiff has accused six other brands of patent infringement here, the Georgia DJ Action would be comparatively streamlined by only addressing the Anker accused products, which suggests a faster resolution in Georgia is more likely. As for a possible appeal to the Federal Circuit, that may occur regardless of forum.

Finally, Plaintiff fails to proffer any rationale aside from its own conclusory statements that severing and staying the portions of this case regarding accused Anker products would result in the spoliation of evidence. As the "true defendant" in the Georgia DJ Action, Anker possesses the relevant discovery and witnesses to address infringement of the Anker products, obviating Plaintiff's unfounded evidentiary concerns.

## II. CONCLUSION

For the foregoing reasons and the reasons already briefed, Defendants respectfully request that the Court grant Defendants' Motions to Stay.

| | |
|---|---|
| Dated: December 8, 2023 | Respectfully submitted,<br><br>By: */s/ Jason Xu*<br>Jason Liang Xu (DC 980531)<br>**RIMON P.C.**<br>1990 K Street NW, Suite 420<br>Washington, D.C. 20006<br>jason.xu@rimonlaw.com<br>Tel: (202) 470-2141<br><br>John Handy<br>1765 Greensboro Station Place Tower I<br>Suite 900<br>McLean, VA 22102<br>john.handy@rimonlaw.com<br>Tel: (703) 559-7360<br><br>*Attorneys for Defendants* |